# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| RED ROOF FRANCHISING, LLC,<br>7815 Walton Parkway<br>New Albany, Ohio 43054<br><br>    Plaintiff,<br><br>v.<br><br>GALAXY, LLC<br>ATTN: Ahmed Dhanani<br>520 Robert Court NW<br>Kennesaw, GA 30144<br><br>and<br><br>AHMED DHANANI,<br>1017 Bridgewater Park Drive<br>Birmingham, AL 35244,<br><br>and<br><br>SHABANA DHANANI,<br>1017 Bridgewater Park Drive,<br>Birmingham, AL 35244<br><br>    Defendants. | Case No: 2:23-CV-2799<br><br>Judge |

## COMPLAINT

For its Complaint against Defendants Galaxy, LLC ("Galaxy"), Ahmed Dhanani, and Shabana Dhanani (collectively, "Defendants"), Plaintiff Red Roof Franchising, LLC ("Red Roof") hereby pleads and avers as follows:

## PARTIES

1. Plaintiff Red Roof is a Delaware limited liability company with its principal place of business located at 7815 Walton Parkway, New Albany, Ohio 43054.

2. Defendant Galaxy is a Georgia Limited Liability Company with its principal place of business at 520 Robert Court NW, Kennesaw, GA, 30144.

3. Upon information and belief, Defendants Ahmed and Shabana Dhanani are individuals who reside at 1017 Bridgewater Park Drive, Birmingham, Alabama 35244.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 15 U.S.C. §§ 1121, 1331, 1332, and 1338 and 17 U.S.C. § 101, et seq.

5. This Court has supplemental jurisdiction over the pendent state law claims in this action pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this District pursuant to the terms of a forum selection clause contained in a written agreement between the parties. Specifically, Section 17.7 of the June 5, 2013 Franchise Agreement between Red Roof and Galaxy (the "Franchise Agreement") provides that the contracting parties "irrevocably submit themselves to the jurisdiction of the state and federal courts located in Columbus, Ohio having subject matter jurisdiction of the claim, and hereby waive all objections to personal jurisdiction for the purpose of carrying out this provision." A true and correct copy of the Franchise Agreement is attached as **Exhibit 1**.

## FACTS

**A.    Red Roof Franchising**

7. Over the years, Red Roof has developed and refined a distinctive system for the establishment and operation of motels that are designed to compete directly with other brands in the economy segment of the lodging market. Red Roof motels operate under the trade name and service mark RED ROOF INN® and other designated proprietary marks (the "Red Roof Marks") for which Red Roof holds/owns multiple trademark registrations. True and accurate copies of Red Roof's certificates of registration for the Red Roof Marks are attached as **Exhibits 2 and 3**.

2

8. Using the Red Roof Marks, Red Roof franchises its system throughout the United States. Since the first Red Roof Inn opened in 1973 in Grove City, Ohio, over 500 locations have been opened domestically and internationally.

9. Red Roof also holds a copyright over certain design elements, including bedding and other materials bearing Red Roof's copyrighted logo (the "Red Roof Copyright").

10. Red Roof has also developed and owns the Red Roof distinctive trade dress, which comprises several elements and includes but is not limited to, the Red Roof slanted roof design, Red Roof's distinctive red color roof tiles, the distinctive red color used in connection with the exterior and interior of Red Roof properties, and the tower design used in connection with the display of Red Roof signage (collectively, the "Red Roof Trade Dress").

**B.** **The Franchise Agreement**

11. On or about June 5, 2013, Red Roof and Galaxy entered into the Franchise Agreement, under which Red Roof granted Galaxy certain licenses for the operation of a Red Roof Inn at 520 Roberts Court, NW, Kennesaw, Georgia 30144 (the "Subject Property").

12. Specifically, under Section 1.1 of the Franchise Agreement, Red Roof granted Galaxy the right, and Galaxy accepted the obligation, to "operate the Inn as a Red Roof Inn at the Approved Location and to use the System and Proprietary Marks in compliance with the Standards and the terms of this Franchise Agreement in connection with the ownership and operation of the Inn."

13. As detailed in Section 2.1 of the Franchise Agreement and the attached Exhibit A thereto, the initial term of the Franchise Agreement was to expire twenty (20) years after the Effective Date, June 5, 2013, unless terminated prior to that time in accordance with the terms of the Franchise Agreement.

14. Section 4 of the Franchise Agreement required that Galaxy make certain payments to Red Roof, including a monthly Royalty Fee, a Marketing and Reservation Fee, a Preferred Members Program Fee, Booking Fees, and other fees relating to the operation of the Subject Property.

15. Pursuant to Section 4.6 of the Franchise Agreement, in the event Galaxy failed to pay an invoice by its due date, Red Roof had the right to impose a late fee of fifty dollars ($50) and charge interest in an amount equal to the lesser of (a) eighteen percent (18%) interest per annum or (b) the maximum rate permitted by law.

16. Upon termination, Section 14.1.1 of the Franchise Agreement requires Galaxy to "[i]mmediately cease to operate the Inn under the System and shall not thereafter, directly or indirectly, represent to the public or hold itself out as a present or former Red Roof Inn franchisee."

17. Section 14.1.2 of the Franchise Agreement further requires that upon termination, Galaxy immediately and permanently cease to use the name "Red Roof Inn" and any other Red Roof intellectual property or identifying characteristics of the Red Roof system, including but not limited to the Red Roof Marks and the Red Roof Copyright (together, the "Red Roof Intellectual Property").

18. Galaxy is further obligated upon termination to "remove and discontinue using for any purpose, any and all signs" and other articles which displayed the Red Roof Intellectual Property. Specifically, Section 14.1.2 of the Franchise Agreement provides that "[a]ny signs bearing the [Red Roof Intellectual Property] which [Galaxy is] unable to remove within one (1) day following expiration or termination of this Franchise Agreement shall be completely covered by [Galaxy] until the time of their removal, which shall be within ten (10) days following the expiration or termination of this Franchise Agreement."

19. Pursuant to Section 14.1.7 of the Franchise Agreement, Galaxy further agreed that, upon termination or expiration of the Franchise Agreement, Galaxy shall "[p]ay upon demand to [Red Roof] all damages, costs and expenses, including reasonable attorneys' fees, incurred by [Red Roof] in connection with [Galaxy's] default and/or the early termination or expiration of this Franchise Agreement including, without limitation . . . those incurred to enforce and/or obtain injunctive or other relief in connection with this Section 14."

20. In connection with Galaxy's execution and acceptance of obligations under the Franchise Agreement, Defendants Ahmed and Shabana Dhanani (collectively, "Guarantors") executed a Guarantee, Indemnification and Acknowledgement (the "Guarantee") in favor of Galaxy. The Guarantee is attached to the Franchise Agreement as Exhibit C.

21. Pursuant to the terms of the Guarantee, Guarantors agreed, among other things, "to guarantee to [Red Roof] . . . the due, complete and punctual performance and observance of all of [Galaxy's] financial obligations under the Franchise Agreement including, without limitation, the due and timely performance of all payment obligations." Further, Guarantors agreed "to be individually bound by all of the terms of the Franchise Agreement," including "all covenants which by their terms continue in force after the expiration or termination of the Franchise Agreement."

22. Under the terms of the Guarantee, Guarantors also agreed, among other things, to "pay [Red Roof] . . . for all costs and expenses (including, but not limited to, reasonable attorneys' fees and court costs) [it may] incur in connection with any action … to enforce this Guarantee or any other action related to or arising out of this Guarantee in which [Red Roof] . . . is deemed to be the prevailing party."

C. **Defendant's Repudiation of the Franchise Agreement**

23. Despite having agreed to continuously operate the Property as a Red Roof Inn for the term of the Franchise Agreement, which was set to run through June 4, 2033, Galaxy notified Red Roof on June 24, 2022 that it was unilaterally terminating the Franchise Agreement effective March 1, 2023 (the "Notice of Repudiation"). Galaxy's Notice of Repudiation is attached as **Exhibit 4**.

24. On May 3, 2023, Red Roof sent Galaxy a Notice of Default and Termination ("Notice of Termination"), in which Red Roof acknowledged that Galaxy had notified Red Roof of its intention to terminate the Franchise Agreement unilaterally, effective March 31, 2023 (the "Repudiation Date"). Red Roof noted that Galaxy had no unilateral right under the Franchise Agreement to terminate the Franchise Agreement. Red Roof also noted that Galaxy had, as of the Repudiation Date, ceased operating the Property under the Red Roof Marks, which was a default under Section 13.2.3 of the Franchise Agreement. Because of that default, Red Roof terminated the Franchise Agreement as of May 3, 2023. The Notice of Termination is attached as **Exhibit 5**.

25. The Notice of Termination also reminded Defendants of their liabilities and obligations under the Franchise Agreement and Guaranty, including the obligations in Section 14.1 of the Franchise Agreement that take effect upon termination. Those obligations include, among other things, immediately and permanently de-identifying the Property as a "Red Roof Inn," refraining from using, by advertising or in any other manner whatsoever, the name "Red Roof Inn," or any other name, trademarks, or service marks associated with Red Roof the Proprietary Marks or identifying characteristics of the System, returning all proprietary materials to Red Roof, and timely paying all sums owed to Red Roof.

26. Despite having received notice and being reminded of the foregoing, Defendants have failed and/or refused to comply with the Franchise Agreement and have continued to violate and breach the terms of the Franchise Agreement.

D. **Defendants' Continuing, Unauthorized Use of the Red Roof Intellectual Property and Red Roof Trade Dress**

27. Among other things, Defendants have failed to satisfy their obligations under the Franchise Agreement by failing to pay damages, failing to cease operating the Inn under the Red Roof System, continuing to represent to the public or hold themselves out as a Red Roof Inn franchisee, advertising the Subject Property under the name "Red Roof Inn," failing to make modifications or alterations to distinguish the Subject Property from other Red Roof Inns, and continuing to use reproductions, counterfeits, copies, and colorable imitation of the Red Roof Intellectual Property.

28. As a result, by letter dated May 22, 2023, Red Roof demanded in writing that Defendants de-identify the Subject Property within ten days, immediately and permanently cease and desist from all further use of the Red Roof Intellectual Property, and provide Red Roof with evidence that the Proprietary Marks and other proprietary items had been removed from the Subject Property (the "Demand"). A true and accurate copy of the Demand is attached as **Exhibit 6**.

29. The Demand stated that Galaxy had failed to completely de-identify the Subject Property in accordance with Section 14.1 of the Franchise Agreement. Specifically, photograph evidence confirmed that Galaxy had failed to remove the Red Roof building sign, the Red Roof lobby sign, and Red Roof individual door signs. True and accurate copies of the photos demonstrating Defendants' failure to de-identify the Subject Property are attached as **Exhibit 7**.

30. Defendants have willfully disregarded the Demand Letter and have continued displaying Red Roof signage near the entrance, the street, and the towers, which is not only a breach of the Franchise Agreement and Guarantee, but also violates Red Roof's statutory rights with regard to the protection and use of the Red Roof Intellectual Property.

31. On information and belief, Defendants' continued, unlawful, and infringing use of the Red Roof Intellectual Property has caused, and will continue to cause, customer confusion in the future, diluting the distinctive quality of Red Roof's Intellectual Property and Trade Dress. Defendants' continued, unlawful, and infringing use will also dilute Red Roof's business reputation by implying that the Subject Property is somehow affiliated with or connected to Red Roof.  As a result, such activities by Defendants have caused and will continue to cause Red Roof to incur damages in an amount to be determined at trial.

## COUNT I
## TRADEMARK INFRINGEMENT
**(Against All Defendants)**
**(15 U.S.C. § 1114)**

32. Red Roof hereby incorporates the foregoing paragraphs by reference as though fully set forth herein.

33. Red Roof owns all rights, title, and interest in and to the Red Roof Marks, which have been registered with the United States Patent and Trademark Office.

34. The Red Roof Marks are strong and distinctive and designate Red Roof as the source of all products and services advertised, marketed, sold, or used in connection with the Red Roof Marks.  The Red Roof Marks and the business reputation and goodwill associated with their use in the United States are therefore of great value, are highly distinctive, and have become associated in the mind of the public with motel services of a standard nature and particular quality and reputation.

35. Without Red Roof's authorization or consent, and with knowledge of Red Roof's well-known rights in and to the Red Roof Marks, Defendants have reproduced, counterfeited, and sold counterfeit services to the consuming public of the United States in direct competition with Red Roof in or affecting interstate commerce.

36. Specifically, Defendants have continued to use the Red Roof Marks and/or trade and marketing materials that are confusingly similar to the Red Roof Marks, which have been used by Defendants to market products and services that are virtually identical and/or closely related to the products and services associated with the Red Roof Marks.

37. By so doing, Defendants have misappropriated, used, and/or counterfeited the Red Roof Marks, and these actions by Defendants have been knowing, intentional, and willful. Indeed, Defendants' acts demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Red Roof Marks to Red Roof's great and irreparable injury. In committing these wrongs, the Defendants acted willfully within the meaning of 15 U.S.C. § 1117(c)(2).

38. On information and belief, Defendants' use of the Red Roof Marks has caused and will continue to cause confusion, mistake, and deception among the general purchasing public as to the origin of Defendants' services, and deceived the public into believing that Defendants' services originate from, are associated with, or are otherwise authorized by Red Roof, all to the damage and detriment of Red Roof's reputation, goodwill, and profits.

39. Defendants' continuing use of the Red Roof Marks and/or reproductions, counterfeits, and copies of the Red Roof Marks constitute trademark infringement, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

40. Defendants' unauthorized use of the Red Roof Marks as set forth above has resulted in Defendants unfairly benefitting from Red Roof's advertising and promotion and has allowed

Defendants to profit from Red Roof's reputation and their registered Red Roof Marks, to the substantial and irreparable injury of the public, Red Roof, and the Red Roof Marks, and the substantial goodwill represented thereby.

41. Defendants' activities have caused and will continue to cause irreparable harm to Red Roof, for which it has no adequate remedy at law, because: (i) the Red Roof Marks comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with Red Roof's goodwill and customer relationships and is harming and will continue to substantially harm Red Roof's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to Red Roof, are continuing. Accordingly, Red Roof is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

42. Pursuant to 15 U.S.C. §1117(a), Red Roof is also entitled to an order: (i) requiring Defendants to account to Red Roof for any and all profits derived from their infringing actions, to be increased in accordance with the applicable provisions of law; (ii) awarding Red Roof all damages it has sustained as a result of Defendants' conduct; and (iii) awarding Red Roof its costs incurred in pursuing this action.

43. Because Defendants' conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), Red Roof is also entitled to an award of treble damages against Defendants for their infringement of the Red Roof Marks.

**COUNT II**
**FEDERAL UNFAIR COMPETITION/TRADE DRESS INFRINGEMENT/**
**FALSE DESIGNATION OF ORIGIN**
**(Against All Defendants)**
**(15 U.S.C. § 1125(a))**

44. Red Roof hereby incorporates the foregoing paragraphs by reference as though fully set forth herein.

45. Red Roof has invested in and owns all rights, title, and interest in and to the Red Roof Trade Dress, which includes the Red Roof Intellectual Property.

46. The Red Roof Trade Dress is distinctive in the marketplace and has acquired secondary meaning.

47. Specifically, the Red Roof Trade Dress has come to designate Red Roof as the source of all goods and services advertised, marketed, sold, or used in connection with the related and incorporated marks and other characteristics.

48. In addition, by virtue of Red Roof's decades of use of the Red Roof Trade Dress in connection with its products and services, and its extensive marketing, advertising, promotion, and sale of its products and services under and in connection with the Red Roof Trade Dress and Red Roof Intellectual Property, the Red Roof Trade Dress has acquired secondary meaning, whereby the consuming public of this District, the State of Ohio, and the United States associate the Red Roof Trade Dress and Red Roof Intellectual Property with a single source of products and services.

49. Defendants are aware of Red Roof's exclusive rights in the Red Roof Trade Dress and Red Roof Intellectual Property but have knowingly and willfully used the Red Roof Trade Dress and Red Roof Intellectual Property to market, promote, and rent rooms at the Subject Property using the Red Roof Trade Dress and Red Roof Intellectual Property.

50. By knowingly and willfully continuing their unauthorized use the Red Roof Trade Dress and Red Roof Intellectual Property to market and promote their goods and services, Defendants intended to, and have in fact, confused and misled consumers into believing, and misrepresented and created the false impression, that Red Roof authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the Red Roof Trade Dress and/or Red Roof Intellectual Property.

51. In fact, following the termination of the Franchise Agreement on May 3, 2023, there has been no connection, association, or licensing relationship between Red Roof and Defendants, nor has Red Roof authorized, licensed, or given permission to Defendants to use the Red Roof Trade Dress and/or Red Roof Intellectual Property in any manner. As such, Defendants, by marketing, promoting, and renting rooms at the Subject Property bearing the Red Roof Trade Dress, have (on information and belief) caused confusion and mistake among prospective or actual customers, in violation of 15 U.S.C. § 1125(a).

52. Defendants' actions thus constitute false designation of origin and unfair competition, and as a direct and proximate result of Defendants' wrongful conduct, Red Roof has been and will continue to be damaged.

53. Defendants' activities have also caused, and will continue to cause, irreparable harm to Red Roof, for which it has no adequate remedy at law, in that: (i) the Red Roof Trade Dress and Red Roof Intellectual Property comprise unique and valuable property carrying a market value that cannot easily be determined; (ii) Defendants' infringement constitutes interference with Red Roof's goodwill and customer relationships and will substantially harm Red Roof's reputation as a source of goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to Red Roof are continuing. Accordingly, in addition to damages, Red Roof is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

54. Pursuant to 15 U.S.C. §1117(a), Red Roof is entitled to an order: (i) requiring Defendants to account to Red Roof for any and all profits derived from their actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by Red Roof that have been caused by Defendants' conduct.

55. Defendants' conduct was and is intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), Red Roof is therefore entitled to an award of treble damages against Defendants.

56. Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus Red Roof is also entitled to an award of attorneys' fees and costs.

**COUNT III**
**COPYRIGHT INFRINGEMENT**
**(Against All Defendants)**
**(17 U.S.C. § 101, *et seq.*)**

57. Red Roof hereby incorporates the foregoing paragraphs by reference as though fully set forth herein.

58. Red Roof owns the Red Roof Copyright.

59. Upon information and belief, Defendants, through the actions described in this Amended Complaint, have violated Red Roof's exclusive rights in the Red Roof Copyright by continuing to use copyrighted Red Roof design elements and materials on the Subject Property without permission, and without legal justification of any kind.

60. Defendants' actions are and were intentional and willful and constitute copyright infringement, as a result of unlawful, widespread advertising activities to the public.

61. Defendants' acts of copyright infringement have inflicted irreparable harm on Red Roof, which is therefore entitled to injunctive relief, as well as an award of damages under 17 U.S.C. § 504 (b) and/or (c).

**COUNT IV**
**OHIO DECEPTIVE TRADE PRACTICES ACT**
**(Against All Defendants)**
**(Ohio Revised Code § 4165 *et seq.*)**

62. Red Roof hereby incorporates the foregoing paragraphs by reference as though fully set forth herein.

63. Via the actions described above, Defendants have violated the Ohio Deceptive Trade Practices Act.

64. Defendants' continuing use of the Red Roof Marks and Red Roof Trade Dress on unauthorized goods and services is likely to cause confusion as to the origin of Defendants' goods and services and is likely to cause others to believe that there is a relationship between Defendants and Red Roof, and/or that Red Roof has authorized Defendants to use the Red Roof Intellectual Property.

65. Defendants' wrongful acts have permitted and will permit them to receive substantial profits based upon the strength of Red Roof's reputation and the substantial goodwill it has built up in the Red Roof Intellectual Property and Red Roof Trade Dress.

66. As a direct and proximate result of Defendants' wrongful conduct, Red Roof has been and will continue to be harmed and is entitled to recover damages pursuant to Ohio Rev. Code § 4165.03(A)(2).

67. Unless an injunction is issued enjoining any continuing or future use of the Red Roof Intellectual Property by Defendants, such continuing or future use is likely to continue to cause confusion amongst consumers and thereby irreparably damage Red Roof. Red Roof has no adequate remedy at law for such harm caused by Defendants' improper use and is therefore entitled to injunctive relief pursuant to Ohio Rev. Code § 4165.03(A)(1).

68. At all relevant times, Defendants' wrongful conduct has been willful, and Defendants knew their actions were deceptive. Accordingly, Red Roof is also entitled to recover its reasonable attorneys' fees and costs pursuant to Ohio Rev. Code § 4165.03(B).

## COUNT V
## COMMON LAW UNFAIR COMPETITION
**(Against All Defendants)**

69. Red Roof hereby incorporates the foregoing paragraphs by reference as though fully set forth herein.

70. Red Roof has valid and protectible common law rights in and to the Red Roof Trade Dress and the Red Roof Intellectual Property.

71. Defendants' use of the Red Roof Trade Dress and the Red Roof Intellectual Property has caused and is likely to continue to cause confusion, deception, and mistake by creating the false and misleading impression that Defendants' services originate from Red Roof, are associated or connected with Red Roof, and/or have Red Roof's sponsorship, endorsement, or approval.

72. The natural and probable tendency and effect of Defendants' conduct is to deceive the public so as to pass off the services and/or business of Defendants as and for those of Red Roof. Defendants have caused and are likely to continue to cause substantial injury to the public and to Red Roof, thereby entitling Red Roof to injunctive relief, and to recover actual damages, costs, and reasonable attorneys' fees.

73. Defendants' wrongful conduct was willful and deliberate or recklessly indifferent to the rights of Plaintiffs and, on information and belief, has permitted Defendants to receive a benefit from misappropriating Red Roof's efforts and exploiting Red Roof's reputation and the Red Roof Intellectual Property and Trade Dress to market and sell their services. These actions by Defendants constitute unfair competition under Ohio law.

74. As a direct and proximate result of Defendants' unfair competition, Red Roof has been and will continue to be damaged.

75. Because Defendants have willfully and intentionally engaged in these acts of unfair competition, Red Roof is also entitled to recover punitive damages.

## COUNT VI
## BREACH OF CONTRACT
### (Franchise Agreement – against Galaxy)

76. Red Roof hereby incorporates the foregoing paragraphs by reference as though fully set forth herein.

77. Under the terms of the Franchise Agreement, Red Roof granted Galaxy the right and license to establish and operate a franchised Red Roof Inn located at the Subject Property, in exchange for Galaxy performing its contractual obligations, including timely payment of all fees set forth in Section 4 of the Franchise Agreement.

78. Galaxy has breached the Franchise Agreement by failing to perform these and other contractual obligations, including failing to pay damages, failing to cease operating the Inn under the Red Roof System following termination, continuing to represent to the public or hold itself out as a Red Roof Inn franchisee, advertising the Subject Property under the name "Red Roof Inn," failing to make modifications or alterations to distinguish the Subject Property from other Red Roof Inns, and continuing to use reproductions, counterfeits, copies, and colorable imitation of the Red Roof Intellectual Property.

79. Red Roof has fully performed all of its obligations under the Franchise Agreement.

80. Galaxy's breaches and violations of the Franchise Agreement have caused Red Roof to incur damages in an amount to be proven at trial, in addition to the damages it is entitled to recover under the terms of the Franchise Agreement.

81. As a result of Galaxy's breaches of the Franchise Agreement, Red Roof is also entitled to an order permanently enjoining Galaxy from further and/or continued use of the Red Roof Intellectual Property.

82. Under the terms of the Franchise Agreement, Red Roof is also entitled to recover from Galaxy its reasonable attorneys' fees and costs incurred in connection with Galaxy's default and the termination of the Franchise Agreement, including its costs and fees incurred in this matter.

## COUNT VII
## BREACH OF CONTRACT
**(Guarantee – against Guarantors)**

83. Red Roof hereby incorporates the foregoing paragraphs by reference as though fully set forth herein.

84. Pursuant to the terms of the Guarantee, Guarantors agreed, among other things, "to guarantee to [Red Roof] . . . the due, complete and punctual performance and observance of all of [Galaxy's] financial obligations under the Franchise Agreement including, without limitation, the due and timely performance of all payment obligations."

85. Guarantors also agreed "to be individually bound by all of the terms of the Franchise Agreement," including "all covenants which by their terms continue in force after the expiration or termination of the Franchise Agreement."

86. Red Roof has fully performed all of its obligations in connection with the Guarantee.

87. As a result of Galaxy's default, violation, and breach of the Franchise Agreement, Guarantors are liable to Red Roof for all amounts owed to Red Roof by Galaxy.

88. Guarantors have failed and/or refused to pay the amounts due to Red Roof under the Franchise Agreement and Guarantee.

89. Guarantors have also failed and/or refused to secure Galaxy's compliance with its contractual obligations to Red Roof, including payment of amounts due to Red Roof and cessation of Galaxy's continuing violations of Red Roof's contractual and statutory intellectual property rights.

90. Guarantors have thus breached the Guarantee, and Red Roof is entitled to recover from Guarantors all amounts due and owing under the Franchise Agreement and Guarantee.

91. Under the terms of the Franchise Agreement and Guarantee, Red Roof is also entitled to recover from Guarantors all of Red Roof's reasonable attorneys' fees and costs incurred in connection with such breaches, including all fees and costs incurred in this matter.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Red Roof Franchising, LLC ("Red Roof") prays the Court enter judgment in its favor and award it relief as follows:

1. That Red Roof be awarded and recover from Defendants the amounts due and owing under the Franchise Agreement, together with interest, attorneys' fees, and costs of suit, and all other fees that should be paid to compensate Plaintiff for Defendants' breach of the Franchise Agreement;

2. That the Court enter an order permanently restraining and enjoining Defendants, their agents, servants, employees, and other person in active concert with Defendants from any and all further use of the Red Roof Marks and any other name or mark confusingly similar to the Red Roof Marks;

3. That the Court enter an order permanently restraining and enjoining Defendants, their agents, servants, employees, and other person in active concert with Defendants from any and all further use of the Red Roof Copyright and any other work that reflects, resembles, and/or incorporates the Red Roof Copyright;

4. That the Court enter an order permanently restraining and enjoining Defendants, their agents, servants, employees, and other person in active concert with Defendants from any and all further use of the Red Roof Trade Dress and any other trade dress that is substantially similar to the Red Roof Trade Dress;

5. That pursuant to 15 U.S.C. § 1116, Defendants be directed to file with the Court and serve upon Red Roof within thirty (30) days after issuance of an injunction, a report

in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

6. That Red Roof be awarded actual and/or statutory damages to which they are entitled as a result of Defendants' unlawful conduct, pursuant to 17 U.S.C. § 504, Rev. Code § 4165.03, and/or other applicable law;

7. That Red Roof be awarded its costs it incurred in connection with this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c);

8. That Red Roof be awarded its attorneys' fees and costs incurred as a result of and/or in connection with Defendants' breaches of the Franchise Agreement and Guarantee;

9. That Red Roof be awarded punitive damages; and

10. That the Court grant Red Roof such other and further relief as the Court may deem just and proper.

DATED: August 29, 2023

Respectfully submitted,

*/s/ Aaron T. Brogdon*
Aaron T. Brogdon (0081858) (Trial Attorney)
Frank J. Reed, Jr. (0055234)
Nicole Mattingly (0101556)
Frost Brown Todd LLP
10 West Broad Street, Suite 2300
Columbus, Ohio 43215
Telephone: 614.559.7213
Facsimile: 614.464.1737
abrogdon@fbtlaw.com
freed@fbtlaw.com
nmattingly@fbtlaw.com

*Attorneys for Plaintiff Red Roof Franchising, LLC*

## JURY DEMAND

Plaintiff demands a trial by jury on all matters to which it is entitled.

*/s/ Aaron T. Brogdon*
Aaron T. Brogdon